## 9129

### KILPATRICK v. CITY OF SPARTANBURG *ET AL.*

(85 S. E. 775.)

LANDLORD AND TENANT. DEFECTIVE PREMISES. NEGLIGENCE. PARENT AND CHILD.

1. LANDLORD AND TENANT—INJURIES TO TENANT'S CHILD—LIABILITY FOR.—Plaintiff was the lessee of premises abutting on a street which was higher than the house. A board walk three or four feet wide extended from the house to the sidewalk. Thereafter the street was widened, and the lessor directed the contractor to saw the walk in two. The piece sawed off was left, and the lessor's wife and another occupant moved it into the yard, where it was used as a fence. *Held* that, defendant not having directed the placing of the portion sawed off upon the demised premises, he was not liable for an injury sustained by plaintiff's minor child when the fence fell on it.

2. LANDLORD AND TENANT—INJURIES TO TENANT'S CHILD—INTERVENING CAUSES.—In such case, defendants were not liable; there being two intervening causes, the removal of the walkway and its use as a fence.

3. PARENT AND CHILD—INJURIES TO CHILD—IMPUTED NEGLIGENCE.—In such case, where those in charge of the infant were guilty of negligence, the tenant could not recover.

Before MOORE, J., Spartanburg, November, 1914. Reversed.

Action by Arthur Kilpatrick against the City of Spartanburg and others and L. D. Dunbar and P. A. Dunbar. From a judgment against the last named defendants, they appeal on the following exceptions:

FOOTNOTE.—As to liability of landlord to tenant and his family, for injuries to person from defect in premises, see notes in 48 L. R. A. (N. S.) 917-921; from cause arising during tenancy, see note in 5 L. R. A. (N. S.) 316.

His Honor, the presiding Judge erred:

1. In refusing the defendants' motion for a nonsuit upon the grounds stated, and thereby holding that there was evidence of negligence by the defendants constituting a proximate cause of the injuries to plaintiff, and in not holding that plaintiff was precluded from recovering by having shown contributory negligence.

2. In refusing defendants' motion for direction of verdict upon the grounds stated, and thereby holding:

(a) That defendants were liable for injuries to plaintiff on account of filling in when there was no claim that the defendants had anything to do with the filling in, and were merely owners of the premises occupied by plaintiff.

(b) That there was evidence of negligence on the part of the defendants.

(c) That there was evidence of some act of the defendants causing injuries to plaintiff.

(d) That the testimony had not shown conclusively contributory negligence precluding plaintiff from recovering.

3. In refusing defendants' motion for a new trial upon the grounds stated, thereby holding that the jury had not awarded a verdict unsupported by testimony under his Honor's charge, and that his Honor's charge had not misled the jury as to the law of the case.

4. In charging the jury as follows:

But the action here is by the plaintiff, Arthur Kilpatrick, for the recovery of damages alleged to have been sustained by him in his property rights by reason of the alleged wrongful acts of the defendants, such property rights so damaged being alleged to consist, as to the loss, in the loss of the use of said yard and board walk, and, as to the child, in the necessary expenditure of money by the plaintiff in treating the injuries of the child, and the loss of the pleasure of the father in the society of the child by reason of the alleged wrongful acts of the defendants, whereby the

plaintiff as such father is averred to have been caused great mental suffering, worry, and trouble.

Said charge leading the jury to award damages to the plaintiff for mental suffering contrary to the law governing the case.

5. In charging the jury as follows:

So far as concerns a trespass upon lands in the possession of another, the party so in possession would be entitled to recover damages against the trespasser upon his possession, and the person so going upon real property in the possession of another could only defend and defeat such right of recovery by showing a right and title in himself to such property and consequent right of possession or a right and title to such property in some third person under whom he made such entry and who had the right to take possession and had authorized such entry by him.

Said charge leading the jury to find against the defendants damages for a naked trespass.

6. In charging the jury as follows:

In estimating such damages, you will take into consideration any money expended by the plaintiff in the treatment by medical services and medicine, nursing and attention of the child in consequence of such injury and rendered necessary by such injury, if there was such, and any other loss sustained by the father, the plaintiff, for the loss of the society during such time as it was suffering from such injury. But you cannot award any damages for the injury suffered by such child or for the suffering endured by such child itself; because that would be a cause of action in favor of the child and not in favor of the father. You will estimate such damage for loss and damage sustained by him, if you find that he is entitled to recover under the principles I have stated to you, and not for any injury and damage suffered by the child.

Said charge, in connection with the charge noted under exception 5, led the jury to award damages to the plaintiff for mental suffering.

7. In refusing defendants' first request to charge as follows:

That there is no evidence that Dunbar had employed any one to fill in the street or was cognizant of the manner in which it was done, and in the absence of permission or knowledge, he is not responsible for the invasion of the possession of the plaintiff by Lowe, if it was invaded.

In that said request contained a sound proposition of law applicable to the case, which the defendants were entitled to the benefit of, being in effect a request to the presiding Judge to instruct the jury that damages could not be awarded against these defendants on a cause of action for filling in plaintiff's yard with dirt.

*Messrs. Carson & Boyd,* for appellants, cite: *As to negligence:* 72 S. C. 346, 350. *Question for Court:* 85 S. C. 363, 369. *And verdict should have been directed for defendant:* 57 S. C. 289; 60 S. C. 400. *Proximate cause:* 11 L. R. A. (N. S.) 738 to 744; 63 L. R. A. 419; 95 U. S. 117; 58 L. R. A. 404; 11 Atl. 627; 24 Atl. 207. *Contributory negligence of parent:* 93 S. C. 372. *Question of law:* 71 S. C. 62; 80 S. C. 1; 82 S. C. 314; 81 S. C. 100-111; 82 S. C. 542. *Negligent act of omission or lack of vigilance:* 71 S. C. 59; 82 S. C. 86. *No presumption of negligence:* 87 S. C. 176. *Tenant's negligence:* 32 S. C. 589; 72 S. C. 250. *Duty to instruct as to absence of evidence:* 14 S. C. 621; 19 S. C. 94; 47 S. C. 488-517; 72 S. C. 411, 420. *Person in possession of premises liable for continuance of nuisance:* 2 Cooley, Torts (3d ed.) 1282. *The tenant has control of the premises:* 57 S. C. 151; 76 S. C. 85. *And landlord owes no duty to keep them in repair:* 2 Rich. 430; 32 S. C. 589; 79 S. C. 460; 10 L. R. A. 147. *Or to correct defects developed during tenancy:* 60 L. R. A.

580, 583; 57 Atl. 1009; 48 Am. Rep. 60. *Mental anguish not an element of damages in absence of bodily injury:* 84 S. E. 15.

*Messrs. Sanders & DePass,* for respondent: *One leaving exposed a dangerous object, apt to attract children, is responsible for damages resulting therefrom to the children:* 78 S. C. 10; 95 S. C. 230.

July 12, 1915.

The opinion of the Court was delivered by Mr. Chief Justice Gary.

The facts are thus substantially stated by appellant's attorneys:

"Plaintiff rented from defendants a house on North Liberty street, in the city of Spartanburg, and, together with two other families, was living in it. Under defendant's deed properly recorded a short time prior to beginning of plaintiff's tenancy, they owned lot upon which house is located, extending eastward to a line 15 feet west of the outer edge of the Liberty street sidewalk, as it existed at the time plaintiff's tenancy began; the 15 feet being reserved in deed for purpose of widening the . street. The street had been raised, and, for convenient access to the street, a board walkway three or four feet wide extended from the front steps of the house some two or three steps above the ground to the sidewalk. During plaintiff's tenancy, the. city developed the street by raising it and by filling in this 15-foot strip, which had been acquired by the city, and extending the width of the street to cover same. The filling in was done by one Lowe, who, being employed by Geilfuss for that purpose, hauled dirt from the excavation of Geilfuss, and with the permission of the city dumped said dirt upon this strip. To facilitate this work, Dunbar, at Lowe's request, told Lowe to saw the walkway in two and move it, which he did, pulling the end

towards the street on the ground near the house, and swinging the end towards the house around toward the house, leaving one corner fastened on the step, the adjacent corner suspended, and the other end on the ground. A few days thereafter, this piece was moved by plaintiff's wife and Mary McKenzie, a 14-year-old girl, a member of a family having apartments in the house occupied by Kilpatrick, and was by them placed flat on the ground in the side yard at the end of the front porch. A day or two later the McKenzie girl, playing and wanting to make a fence between the front yard and the back yard, set this piece of walkway up on edge, extending it from the house towards the outer side of the lot, and tacked a stick on each side to hold it up. This was done about 10 or 11 o'clock a. m. About 4:30 o'clock p. m. of the same day, the McKenzie girl and her smaller sister and Kilpatrick's 4-year-old girl, with her mother's knowledge and consent, were playing in the yard, and, while the McKenzie girl was under the house reading a book, this walkway fell on plaintiff's child, breaking her leg."

His Honor, the presiding Judge, granted the motion for a nonsuit as to all the defendants except the Dunbars, against whom the jury rendered a verdict for $288. The Circuit Judge ruled that the plaintiff was not entitled to punitive damages.

The witness, Lowe, testified that:

"When he started the work he went and asked Dunbar about his board walk, and that Dunbar told him not to cover it up, but to saw it in two, and lay it out of the way; that he borrowed a saw from Dunbar, and he and his son sawed the walkway in two, and took both pieces out of their position and laid them flat down on the ground."

This was a mere suggestion of Dunbar as to the manner in which Lowe should prosecute his work, but was not intended to make him the agent of Dunbar. Dunbar did not even instruct him to place his walkway on the premises

occupied by the plaintiff and others.   The nonsuit should therefore have been granted as to all the defendants. ⸱

Another reason why the nonsuit should have been granted in favor of the Dunbars is that there were two intervening circumstances that prevented the action of the Dunbars from being the proximate cause of the injury, to wit: The removal of the walkway by the plaintiff's wife, and afterwards by Mary McKenzie. *Cooper* v. *Richland*, 76 S. C. 202, 56 S. E. 958, 10 L. R. A. (N. S.) 799, 121 Am. St. Rep. 946; *Snipes* v. *Railway*, 76 S. C. 207, 56 S. E. 959.

It furthermore appears from the testimony that those in charge of the injured infant and of the premises were guilty of contributory negligence.   *Cantrell* v. *Fowler*, 32 S. C. 589, 10 S. E. 934; *Berger* v. *Electric Co.*, 93 S. C. 372, 76 S. E. 1096.

The judgment of the Circuit Court in refusing the nonsuit as to the Dunbars is reversed, and the complaint dismissed.